IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| EKERE INYANGETTE, | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 25-1814-BAH |
| TFC KURTIS HENRY, | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Ekere Inyangette ("Plaintiff"), proceeding pro se, brought suit against Maryland State Trooper Kurtis Henry ("Defendant") pursuant to 42 U.S.C. § 1983 for alleged violation of Plaintiff's Fourth Amendment rights. ECF 1. Pending before the Court is Defendant's motion to dismiss or, alternatively, for summary judgment (the "Motion"). ECF 13. Plaintiff filed an opposition, ECF 15, and Defendant filed a reply, ECF 16. All filings include memoranda of law, and some filings include exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendant's Motion, construed as one for summary judgment, is GRANTED.

## I.    <u>BACKGROUND</u>

This lawsuit arises from Plaintiff's arrest for allegedly driving under the influence of alcohol in February of 2024. ECF 1, at 7. Though the facts alleged in the complaint itself are

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

scant,[2] attached to it is a copy of Defendant's statement of probable cause in support of Plaintiff's arrest along with a trial summary regarding the disposition of Plaintiff's charges from the District Court of Maryland in Harford County.  ECF 1-4 (statement of probable cause); ECF 1-5 (trial summary).  The statement of probable cause provides that on February 27, 2024, Defendant was dispatched to Plaintiff's disabled vehicle on Interstate 95 in Maryland.  ECF 1-4, at 1.  A "Maryland Transportation Authority [("MTA")] Courtesy Patrol Unit was on scene . . . and stated he believed the driver to be impaired."  *Id.*  When Defendant approached Plaintiff, he observed that Plaintiff "attempted to conceal his breath and limit his contact" by "standing bladed from [Defendant] and speaking away from [Defendant] when answering questions."  *Id.*  Defendant "detected a strong odor of an alcoholic beverage coming from [Plaintiff]'s breath" and Plaintiff "advised he had a beer to drink."  *Id.*  Defendant observed Plaintiff's eyes to be "glassy and bloodshot" and his speech as "mumbled and slurred."  *Id.*  Defendant wrote that Plaintiff performed a field sobriety test "unsatisfactorily" and noted that Plaintiff "was unable to follow simple instructions."  *Id.*

The stop and subsequent arrest were also captured on Defendant's body-worn camera (hereinafter referred to as the "Video Exhibit").[3]  When Defendant arrives to the scene of Plaintiff's disabled vehicle, MTA Courtesy Patrolman John Sheridan approaches Defendant's patrol car and states that Plaintiff "did have a beer bottle that disappeared."  Video Exhibit, 1:15–

---

[2] The complaint lists Plaintiff's four charges and alleges that Defendant "falsified documentation . . . to justify the illegal seizure of the plaintiff."  ECF 1, at 7.  Plaintiff then refers to the exhibits attached to the complaint.  *See id.* ("See Exhibit A1 and A2").

[3] Defendant submitted a copy of the body-worn camera footage to Chambers on a USB flash drive. Litigants are typically required to move for leave to file a physical exhibit, but Defendant did not do so.  The Court will excuse this oversight but instructs Defendant to file a motion for leave to file a physical exhibit prior to sending any physical exhibits to Chambers in the future.

1:18; ECF 13-3 (affidavit of Defendant Kurtis Henry), at 2 ¶ 4.  Sheridan states that Plaintiff and another male[4] depicted in the video "both smell under the influence."  Video Exhibit, 1:22–1:24; ECF 1-4, at 1.  Defendant then exits his patrol car and approaches two stopped vehicles, an Infiniti and a Lexus, and two males, one of whom is Plaintiff.  Video Exhibit, 1:40–2:12.  Plaintiff identifies himself as the driver of the Infiniti, which was just purchased at auction.  *Id.* at 2:13–2:43.  The men advise that the Infiniti stopped running on the highway because Plaintiff did not have the key fob in the car with him.  *Id.* at 2:20–2:30.

Defendant "detected a strong odor of alcohol coming from [Plaintiff's] breath," and "observed that [Plaintiff's] eyes were glassy and bloodshot, his speech was mumbled and slurred, and his movements were slow and lethargic."  ECF 13-3, at 2 ¶ 6.  On the camera footage, Defendant asks Plaintiff if he has "had anything to drink today."  Video Exhibit, 3:37–3:40.  Plaintiff does not respond, and Defendant asks again.  *Id.* at 3:42–3:43.  Plaintiff then says, "I'm fine, man."  *Id.* at 3:43–3:44.  Eventually, Plaintiff says he "had a beer earlier," *id.* at 4:08–4:10, and agrees to take a field sobriety test, *id.* at 4:52.

The video reflects that Plaintiff is first asked to use his eyes to follow a pen light as the light is moved.  *Id.* at 6:03–8:28.  Second, Plaintiff is asked to perform a "walk and turn" test.  *Id.* at 8:28–8:30.  Defendant instructs Plaintiff to stand "heel to toe" and "stay there."  *Id.* at 8:40–8:56.  The video shows Plaintiff stepping out of the position, *id.* at 8:56–9:01, which Defendant characterizes as "visibly los[ing] balance and br[eaking] his stance."  ECF 13-3, at 3 ¶ 10.  Plaintiff is then instructed to complete the test by taking a series of 9 heel-toe steps, taking a series of small steps to turn around, and then taking 9 heel-toe steps back, keeping his hands at his side the entire

---

[4] This person is not identified by name in the record before the Court.  The Video Exhibit shows that this individual was attempting to assist with jump-starting Plaintiff's vehicle. Video Exhibit, 1:18–1:22, 2:37.

time. Video Exhibit, 9:03–9:33. Plaintiff asks Defendant to repeat the instructions, *id.* at 9:33, and then completes the test, *id.* at 11:07–11:37. Defendant contends that Plaintiff "failed to obey" certain instructions, such as "to keep his arms by his waist" and "to not stop in the middle of the test." ECF 13-3, at 4 ¶ 10. Third, Defendant asks Plaintiff to complete a one-leg stand test. Video Exhibit, 11:52–11:53. Plaintiff is instructed to pick up one foot, keep his hands at his sides, and count aloud "one-thousand-one, one-thousand-two, one-thousand-three," and so on, until he is told to stop. *Id.* at 12:06–12:28. When told to begin the test, he picks up his left foot and does not begin counting until prompted by Defendant. *Id.* at 13:03–13:09. After beginning counting, Plaintiff "reached 'one thousand-eleven'" and "started counting eleven-hundred, twelve hundred, thirteen hundred, etc." ECF 13-3, at 4 ¶ 11; Video Exhibit, 13:22–13:34. Last, Defendant asks Plaintiff to take a preliminary breath test, and Plaintiff declines to do so. Video Exhibit, 13:36–13:45.

Based on Defendant's "observation, and in conjunction with [his] knowledge, training, and expertise," Defendant contends that he "reasonably believed probable cause existed to arrest [Plaintiff] for operating a motor vehicle while impaired by or under the influence of alcohol." ECF 13-3, at 4–5 ¶ 13. After his arrest and processing, Plaintiff declined to submit to a blood alcohol test. Video Exhibit, 51:02–51:47. Plaintiff was charged with driving or attempting to drive a vehicle while under the influence, driving or attempting to drive a vehicle while impaired by alcohol, stopping a vehicle on a highway ramp, negligent driving, and reckless driving. *See* ECF 1-5, at 1–2. After a trial before Judge Tirabassi of the District Court of Maryland on June 25, 2024, Plaintiff was found not guilty of all charges. *Id.* at 1.

Plaintiff filed suit on June 9, 2025. *See* ECF 1. Plaintiff alleges that Defendant "falsif[ied] documentation in order to justify a violation of 42 U.S.C. § 1983 and illegal seizure of person."

ECF 1, at 8.  Plaintiff seeks $10 million in damages for loss of driving privileges which caused "loss of employment and hardships," *id.* at 7, as well as "pain and suffering," *id.* at 5.  Defendant filed his motion to dismiss or, alternatively, for summary judgment on February 5, 2026, along with an affidavit of Defendant, ECF 13-3 (affidavit of Kurtis Henry), and the body-worn camera footage from Plaintiff's arrest, ECF 13-2 (indicating the body camera footage was provided to Chambers via USB flash drive).  Defendant's Motion is now ripe for disposition.

## II.    LEGAL STANDARD

A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012).  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Conversion of a motion to dismiss into one for summary judgment under Rule 12(d) is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious."  *Id.* at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56

motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Defendant has captioned his motion to dismiss as an alternative motion for summary judgment, *see* ECF 13, and thus Plaintiff is "deemed to be on notice that conversion under Rule 12(d) may occur." *Laughlin*, 149 F.3d at 261. A party opposing the conversion of a motion to dismiss into one for summary judgment ordinarily must submit a Rule 56(d) affidavit setting forth their reasons, and the Fourth Circuit places "great weight" on the necessity of such an affidavit. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). A Rule 56(d) affidavit is inadequate if it merely asks for "discovery for the sake of discovery." *Hamilton v. Mayor of Balt.*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (internal citation omitted). Such a request is properly denied where "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (quoting *Strag v. Bd. of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995)).

Defendant correctly points out that Plaintiff sets forth no argument opposing dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF 16, at 1. Defendant argues that, through Plaintiff's failure to address any motion to dismiss arguments, Plaintiff has "effectively abandoned or waived his claim." *Id.* at 1 n.1. However, Plaintiff has responded to the Motion by opposing summary judgment. *See* ECF 15 (Plaintiff's response in opposition to Defendants' motion for summary judgment). In his opposition, Plaintiff cites to and engages with the summary judgment standard and asserts that there are several genuine disputes of material fact. *Id.* at 3 (providing the legal standard for a motion for summary judgment), at 4 (explaining that "Plaintiff disputes material factual assertions contained in" the statement of probable cause). Plaintiff has not filed a

6

Rule 56(d) affidavit or requested discovery but instead provides a declaration for the Court's consideration in which he disputes the factual assertions in Defendants' statement of probable cause. ECF 15-1 (declaration of Ekere Inyangette). Taken together, Plaintiff's opposition and accompanying declaration do not suggest a waiver of claims, but rather an "acknowledgment of, and assent to, conversion of the motion into one for summary judgment." *See Dollar v. Anne Arundel Cnty.*, Civ. No. BAH-24-1642, 2025 WL 1347064, at *4 (D. Md. May 7, 2025) (converting a motion to dismiss into one for summary judgment where the plaintiff did not file a Rule 56(d) affidavit, identify a need for future discovery, or advance an argument that summary judgment was premature, and instead engaged with the summary judgment standard). Accordingly, the Court will convert Defendant's Motion into one for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 372 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting

*Anderson*, 477 U.S. at 248).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ."  *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)).  For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.  *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)).  "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion."  *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 372 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III.   <u>ANALYSIS</u>

Plaintiff brings a claim against Defendant for "false arrest" in violation of the Fourth Amendment.   *See* ECF 1, at 3.  The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  "A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause."

*Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (*citing Dunaway v. New York*, 442 U.S. 200, 213 (1979)). "Thus, '[i]f a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues.'" *Id.* (alterations in original) (quoting *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001)).  Here, Defendant argues that Plaintiff's claim must fail because probable cause existed to support Plaintiff's arrest, and because Defendant is entitled to qualified immunity.  ECF 13-1, at 12.  Plaintiff argues that "qualified immunity cannot be resolved at summary judgment."  ECF 15, at 3 (capitalization modified).

To the contrary, the Supreme Court has previously stated that "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citation omitted).  This is because qualified immunity is "an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  "Accordingly, qualified immunity should be addressed at the pleading or summary judgment stage whenever possible." *Smith v. Reddy*, 101 F.3d 351, 357 (4th Cir. 1996).  That said, "consideration of the qualified immunity question does not 'override the ordinary rules applicable to summary judgment proceedings.'" *Rambert v. City of Greenville*, 107 F.4th 388, 398 (4th Cir. 2024) (quoting *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005)).  "Although the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding 'whether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Nalls v. Baltimore Cnty.*, Civ. No. ELH-23-0183, 2026 WL 885716, at *73 (D. Md. Mar. 30, 2026) (quoting *Pritchett*

*v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).  Here, the Court concludes that summary judgment is appropriate because Defendant enjoys qualified immunity from suit.

### A.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The immunity [inquiry] balances two important interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024) (quoting *Pearson*, 555 U.S. at 231).  "The protection applies regardless of whether the government official's error is a mistake of law, a mistake of fact or a mistake based on mixed questions of law and fact." *Id.* (citing *Pearson*, 555 U.S. at 231).  "It gives 'government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)).

Qualified immunity "typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation."[5] *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted).  The second step of the analysis acknowledges that even officers who violate a plaintiff's constitutional rights may

---

[5] "In the Fourth Circuit, we have a split burden of proof for the qualified-immunity defense. The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).

be entitled to qualified immunity, provided that the right in question is not so clearly established "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation modified). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful." *Garrett v. Clarke*, 74 F.4th 579, 584 (4th Cir. 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). District courts "may consider either prong of the qualified immunity inquiry first." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018). "The official is entitled to qualified immunity if either prong is not satisfied." *Jones v. Solomon*, 90 F.4th 198, 207 (4th Cir. 2024) (quoting *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019)).

"To determine whether a right is clearly established, [the Court must] assess whether the law has 'been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state.'" *Wilson v. Prince George's Cnty., Maryland*, 893 F.3d 213, 221 (4th Cir. 2018) (citing *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998)). "A right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established' for purposes of qualified immunity." *Id.* (citations omitted). However, courts are "not to define clearly established law at a high level of generality," as "[s]pecificity is especially important in the Fourth Amendment context." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (internal citations omitted). "Defining the right at a high level of generality, 'avoids the crucial question whether the offic[er] acted reasonably in the particular circumstances that he or she faced.'" *Atkinson*, 100 F.4th at 505 (citing *Wesby*, 583 U.S. at 63) (alteration in *Atkinson*). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle*, 566 U.S. at 664 (internal quotation marks omitted). In the context of a Fourth

11

Amendment claim for unlawful seizure or arrest, "whether a plaintiff's right to be free from arrest is clearly established turns not on whether there actually was probable cause . . . but whether an objective law officer could reasonably have believed probable cause to exist." *Thurston v. Frye*, 99 F.4th 665, 676 (4th Cir. 2024).

Plaintiff appears to contend that Defendant lacked probable cause to arrest Plaintiff for driving under the influence. *See* ECF 15, at 5 (arguing that "a reasonable jury could conclude that Defendant[]s lacked reasonably trustworthy information sufficient to establish probable cause"). "Probable cause has long been understood to encompass circumstances that, while less than a preponderance, 'warrant suspicion.'" *Thurston*, 99 F.4th at 673–74 (quoting *United States v. Gondres-Medrano*, 3 F.4th 708, 714 (4th Cir. 2021)). "Whether circumstances 'warrant suspicion' turns on the combination of two factors: the suspect's conduct as known to the officer and the nature of the offense." *Id.* at 674 (quoting *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)). "So to determine whether an arrest was backed by probable cause, we ask whether the facts known to the officer could make a prudent officer believe that the suspect's conduct satisfies the elements of a criminal violation." *Id.* (citing *Hupp*, 931 F.3d at 318); *see also Alexia Burno-Whalen v. State of Maryland*, Civ. No. GJH-15-564, 2016 WL 1259556, at *6 (D. Md. Mar. 28, 2016) ("An officer has probable cause for an arrest when the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." (quoting *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003)) (internal quotation marks omitted))).

Here, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff has failed to establish a violation of the Fourth

12

Amendment because Defendant had probable cause to arrest Plaintiff for "driv[ing] or attempt[ing] to drive any vehicle while under the influence of alcohol." *See* Md. Code Ann., Transp. § 21-902(a)(1)(i); *see also Lewis v. Florio*, Civ. No. CCB-21-1159, 2022 WL 4465877, at *2 (D. Md. Sept. 26, 2022) ("An arrest violates the Fourth Amendment if it is not supported by probable cause." (citing *Hupp*, 931 F.3d at 318)). The following uncontested facts were known to Defendant at the time of Plaintiff's arrest: Defendant arrived on the scene of a vehicle stopped in the roadway on Interstate 95. Video Exhibit, 1:15; ECF 1-4, at 1. Plaintiff identified himself as the driver of the vehicle. Video Exhibit, 2:13–2:43. Upon approaching Plaintiff, Defendant "detected a strong odor of alcohol coming from [Plaintiff]'s breath." ECF 1-4, at 1. And Plaintiff confirmed that he had consumed at least one alcoholic beverage. Video Exhibit, 4:08–4:10; ECF 1-4, at 1. These undisputed facts alone are sufficient to warrant a reasonable belief that Plaintiff committed the offense of driving under the influence of alcohol. *Cf. Pulsifer v. Prince*, Civ. No. MJM-22-3080, 2024 WL 2783898, at *8 n.4 (D. Md. May 30, 2024) (finding that absent other facts, the officer defendant "had a reasonable articulable suspicion based on the odor of alcohol and Plaintiff's admission that he had been consuming alcohol"). Accordingly, Plaintiff's arrest was supported by probable cause, and Defendant enjoys qualified immunity. *Cf. Fersner v. Prince George's Cnty., MD*, 138 F. Supp. 2d 685, 691–92 (D. Md. 2001) (finding an officer was entitled to qualified immunity even where the officer never detected the odor of alcohol, and the plaintiff disputed that he had bloodshot eyes or failed the walk and turn test), *aff'd sub nom. Fersner v. Prince George's Cnty., Maryland*, 22 F. App'x 314 (4th Cir. 2001).

Although Plaintiff disputes certain facts in the record, they do not alter the Court's analysis. Plaintiff first contests the reliability of Sheridan's statement that there was a beer bottle in Plaintiff's vehicle. ECF 15, at 3 ("Civilian assumption does not automatically establish probable

13

cause." (capitalization altered)).  Plaintiff also disputes that he failed the field sobriety test and argues that the body-worn camera footage "does not clearly depict mumbled and slurred speech, or objectively observable impairment as described in the report."  ECF 15, at 4.  Even if the Court were to agree with Plaintiff, "[t]o deny [Defendant] the benefit of the qualified immunity defense," the Court "would have to be persuaded that *no* reasonably competent officer could have concluded that probable cause existed to believe [Plaintiff] was operating under the influence" on the other uncontested facts of the encounter.  *Fersner*, 138 F. Supp. 2d at 691–92.  That is not the case here.

Plaintiff makes much of the fact that he was found not guilty of all charges filed by Defendant.  *See* ECF 1-5, at 1–2; ECF 15, at 1–2.  But an acquittal after trial is not necessarily evidence of a lack of probable cause to arrest, nor does it preclude qualified immunity.  *See Hupp*, 931 F.3d at 318 ("Evidence sufficient to secure a conviction is not required, but probable cause exists only if there is sufficient evidence on which a reasonable officer at the time could have believed that probable cause existed for the arrest."); *Fersner*, 138 F. Supp. 2d at 692 (finding officers were entitled to qualified immunity even when they "made a serious mistake" because "police officers may make mistakes without violating the Fourth Amendment").  "The test for qualified immunity is whether a reasonable officer on the scene could objectively believe that he or she possessed probable cause to arrest Plaintiff."  *Kenny v. Jones*, Civ. No. DKC-2007-2421, 2008 WL 11425695, at *4 (D. Md. July 3, 2008) (quoting *Coates v. Daugherty*, 973 F.2d 290, 293 (4th Cir. 1992)).  "[Q]ualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Drumgoole v. Pastorek*, Civ. No. PX-17-0564, 2018 WL 3496430, at *2 (D. Md. July 20, 2018) (quoting *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002)).  Here, no bright line was transgressed, and any objective officer could have reasonably believed probable cause existed to arrest Plaintiff for

driving under the influence.  Defendant is entitled to qualified immunity, and summary judgment is granted in his favor.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss or, alternatively, for summary judgment, construed as a motion for summary judgment, is granted.

A separate implementing order will issue.

Dated: <u>May 29, 2026</u>                                                              _____/s/_____
                                                                                                      Brendan A. Hurson
                                                                                                      United States District Judge